UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 17-104 |
| CHRIS WELLS | SECTION: "J" |

## ORDER & REASONS

Before the Court is a *Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255* **(Rec. Doc. 314)** filed by Defendant, Chris Wells, and an opposition (Rec. Doc. 323) filed by the Government. Considering the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be denied.

## FACTS AND PROCEDURAL BACKGROUND

On June 8, 2017 Chris Wells was named in an 11-count indictment filed in the Eastern District of Louisiana. Subsequently, on April 17, 2018, Wells appeared before the Court and pled guilty to Counts 1, 4, 6, 7, and 8 of the Indictment. On that same date, the Court accepted Wells' guilty plea and adjudicated him guilty. There is no plea agreement.

On October 4, 2018 the Court sentenced Wells to a term of imprisonment of 240 months, a downward variance from the Pre-Sentence Report's Guideline Range of 262–327 months. Following his guilty plea conviction and sentence, on or about April 15, 2019, Wells filed a direct appeal with the United States Court of Appeals for the Fifth Circuit alleging that his trial counsel rendered ineffective assistance by

failing to inform Wells that he would be sentenced as a career offender. On November 14, 2019, the Fifth Circuit affirmed Wells' conviction, stating that the factual issues underlying the claim for ineffective assistance cannot be determined on the current record and would best be resolved by the district court on § 2255 review.

On August 8, 2021, Wells filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

## LEGAL STANDARD

28 U.S.C. § 2255(a) provides that a federal prisoner serving a court-imposed sentence may move the court that imposed the sentence to vacate, set aside or correct the sentence. Only a narrow set of claims are cognizable on a § 2255 motion: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A claim of error that is neither constitutional nor jurisdictional is not cognizable in a § 2255 proceeding unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (*quoting Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a § 2255 motion is filed, the district court must first conduct a preliminary review. Rules Governing § 2255 Proc., R. 4. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Id.* If the motion

2

raises a non-frivolous claim to relief, the court must order the government to file a response or to take other appropriate action. *Id*. After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted. *Id*. R 8. An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), and the petitioner fails to produce any "independent indicia of the likely merit of [his] allegations," *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (*quoting United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).[1]

## DISCUSSION

Wells argues that his trial counsel provided constitutionally ineffective assistance of counsel by (1) failing to file a motion to suppress the fruits of the search of Wells' home; (2) failing to file a motion to dismiss the indictment; and (3) failing to advise Wells of his status as a career offender along with the consequences of that status. *See generally* (Rec. Doc. 314). In order to prove a claim of ineffective assistance of counsel, the defendant must satisfy two elements: (1) that the lawyer's representation "fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The court's scrutiny of counsel's performance must be highly deferential because the court indulges a strong presumption that counsel's conduct

---

[1] Because the Government does not contest the timeliness of this motion under 28 U.S.C. § 2255(f), the Court will address the motion solely on the merits.

falls within the wide range of professional assistance. *Id.* at 689. Moreover, the deficient performance must have done more than simply prejudice the defense; "petitioner must show that there is a reasonable probability that, absent counsel's deficient representation, the outcome of the proceedings would have been different." *Sonnier v. Quarterman*, 476 F.3d 349, 357 (5th Cir. 2007) (*quoting Rompilla v. Beard*, 545 U.S. 374, 390 (2005)). If the court finds that one of the *Strickland* requirements is not satisfied, it need not consider the other. *See Buxton v. Lynaugh*, 879 F.2d 140, 142 (5th Cir. 1989) (finding that "*Strickland* allows the habeas court to look at either prong first; if either one is found dispositive, it is not necessary to address the other.").

## I. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO SUPPRESS EVIDENCE

Wells first contends that his trial counsel should have filed a motion to suppress the heroin, cocaine, and firearm seized in the search of his home. (Rec. Doc. 314, at 5). Wells argues that the search warrant authorizing the search of his home was not based on probable case because it lacked the required nexus between his home and his alleged criminal activities. *Id.* Thus, Wells asserts, the search was a violation of his Fourth Amendment rights, and the heroin, cocaine, and firearm must be suppressed. *Id.* In response, the Government asserts that "the totality of facts presented to the magistrate was sufficient to establish 'a fair probability' that drugs would be found at Wells' house." (Rec. Doc. 323, at 4).

When a petitioner alleges an ineffective assistance claim based primarily on counsel's alleged failure to litigate a Fourth Amendment issue, the petitioner must additionally prove that his Fourth Amendment claim is meritorious and "that there

is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Petitioner must show that had his counsel objected to the evidence, it would have been suppressed. *See Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).

After reading and reviewing the search warrant (Rec. Doc. 323-1), the Court finds that there was probable cause to search Wells' home. Specifically, the search warrant contained probable cause that heroin and contraband related to the illegal trafficking of narcotics was present in Wells' residence, based upon, in part, Detectives' reliable information that Wells was distributing large amounts of user quantities of heroin on a daily basis, and that he would keep quantities of heroin in his vehicle to distribute from his vehicle. *Id.* at 6. As the Fifth Circuit stated,

> [t]he justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.

*United States v. Green*, 634 F.2d 222, 226 (5th Cir. 1981); *see also United States v. Peltier*, No. CRIM. 96-60016-01, 1996 WL 560585, at *2 (W.D. La. Sept. 3, 1996) (finding that "common sense suggests that someone involved in drug activities will probably keep any evidence of those activities in a place where he has an expectation of privacy, such as his home."). Therefore, the search warrant was based upon

probable cause, and Wells' trial counsel was not ineffective for failing to file a motion
to suppress it.

## II.   COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO FILE A MOTION TO DISMISS THE INDICTMENT

Next, Wells argues that he had ineffective assistance because his counsel failed
to file a motion to dismiss the indictment. (Rec. Doc. 314, at 6). Specifically, Wells
contends that the indictment failed to charge him with the element of "willfulness"
in both his conspiracy and possession with intent charges under 21 U.S.C. §§ 846 and
841, respectively. *Id.* Wells asserts that he was thus deprived of one of the protections
guaranteed by indictments because the indictment failed to contain the elements of
the offense intended to be charged. *Id.* In opposition, the Government avers that
Wells' plea is prima facie evidence that he was aware of the elements of the crimes
with which he was charged. (Rec. Doc. 323, at 6). Specifically, the Government argues
that Wells' actions at the rearraignment confirm he understood the charges: Wells
made sworn statements that he fully understood the nature of the charges against
him; Wells pled guilty to all charged counts, including conspiracy; Wells responded
affirmatively when asked by the Court if he understood what he was charged with;
Wells admitted he did in fact commit the acts in the charged conspiracy count; and
Wells signed a thirteen (13) page factual basis that detailed his acts. *Id.* Moreover,
Wells acknowledged at the rearraignment that he was not forced to plead guilty and
he was satisfied with the services of his counsel. *Id.*

The court measures the sufficiency of an indictment "by whether (1) each count
contains the essential elements of the offense charged, (2) the elements are described

6

with particularity, without any uncertainty or ambiguity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Lavergne*, 805 F.2d 517, 521 (5th Cir. 1986) (*citing United States v. Gordon*, 780 F.2d 1165, 1171–72 (5th Cir. 1986)). Here, Wells asserts that the indictment did not contain all of the essential elements of conspiracy or possession with intent. Wells' specific objection relates to the failure of the Indictment to include the "willfulness" requirement. Notably, neither 21 U.S.C. § 846 or 841 use the words willful, willfulness, or any variation.

First, the Fifth Circuit has found there are three elements to conspiracy: "(1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in the agreement." *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014). Here, Count 1 of the Indictment reads,

> [b]eginning on a date unknown and continuing to on or about April 18, 2017, in the Eastern District of Louisiana and elsewhere, the defendants, CHRIS WELLS, aka "Six," . . . did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, to possess with the intent to distribute 100 grams or more of heroin . . . .

A plain reading of Count 1 of the Indictment shows that all elements of conspiracy under 21 U.S.C. § 846, as outlined by the Fifth Circuit, are met. More than two persons agreed to violate narcotics laws; Wells had knowledge of the agreement; and Wells participated voluntarily. Second, as to 21 U.S.C. § 841, the statute never once uses the word willful, willfulness, or any variation thereof. The statute plainly

requires a person to act "knowingly or intentionally." Counts 4 and 6 of the Indictment read as follows:

> On or about April 13, 2017, in the Eastern District of Louisiana, the defendant, CHRIS WELLS, aka "Six," did *knowingly and intentionally* distribute a quantity of heroin . . . .

> On or about April 18, 2017, in the Eastern District of Louisiana, the defendants, CHRIS WELLS, aka "Six," . . . did *knowingly and intentionally* distribute a quantity of heroin . . . .

(emphasis added). Here, it is clear that both Counts alleging a violation of 21 U.S.C. § 841 meet the knowingly and intentionally requirement. Because the indictment was sufficient, Wells' ineffective assistance allegation fails.

### III. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO ADVISE WELLS OF HIS STATUS AS A CAREER OFFENDER

Finally, Wells argues that he had ineffective assistance because counsel did not advise him that he would be classified as a career offender or the consequences of that status. (Rec. Doc. 314, at 7). Because his plea was uninformed, Wells asserts, his plea was made involuntarily. (Record on Appeal, Case No. 18-31129, Doc. 514917079, at 21). In response, the Government contends that at Wells' rearraignment, the Court advised Wells that the maximum penalty he faced with a guilty plea was life in prison, and thus, he was properly advised of the consequences of said plea. (Rec. Doc. 323, at 7). Moreover, the Government avers that the only proof that Wells' counsel did not advise him that he was a career offender is his own statement of such. *Id.*

The Constitution requires that a defendant be advised and understand the consequences of a guilty plea. *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990) "The consequences of a guilty plea, with respect to sentencing, mean only that

the defendant must know the maximum prison term and fine for the offense charged. As long as the [defendant] 'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982) (*quoting Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)). In order to satisfy the prejudice prong of *Strickland* when a defendant pleads guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (finding that "[a] mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test. A [defendant] must establish that but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial."). Moreover, "[a]lthough [the defendant] obviously expected to receive a lesser sentence than the one imposed, the inability of [the defendant's] counsel to correctly predict the sentence does not constitute ineffective assistance of counsel." *Rivera*, 898 F.2d at 447.

In *United States v. Collins*, the defendant filed a motion to vacate his sentence, arguing that "he was denied effective assistance of counsel because his attorney failed to advise him that he could be sentenced to a term of imprisonment greater than the statutory maximum based on his status as an armed career criminal." *United States v. Collins*, No. CIVA 3:08-CV-606-WHB, 2009 WL 910842, at *1 (S.D. Miss. Apr. 1, 2009). The court found that counsel's representation did not fall below an objective standard of reasonableness because the defendant was "clearly informed of the

maximum term of imprisonment" and that "neither his attorney nor the Court would be able to determine his specific Sentencing Guideline range until after a presentence investigation report was prepared" when the defendant recited as such in court during his plea hearing. *Id.* at *4–5; *see also Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994) (finding that, because the district court is not required to inform a defendant that the applicable Sentencing Guideline range includes the possibility of an enhanced sentence as a career offender, the failure of a lawyer to inform his client of that possibility does not show that the lawyer's representation fell below an objective standard of reasonableness). The *Collins* court also noted that "[i]n many case[s], if not most, an attorney at the time of the plea hearing may not know of prior convictions that would qualify the defendant as an armed career criminal under the Sentencing Guidelines. Additionally, in most cases the court itself would not have such information until the presentence investigation report has been prepared." *Id.*

Finally, the *Collins* court found that the prejudice prong of *Strickland* was not met either because the defendant "was clearly informed by the Court that his Sentencing Guideline range could not be determined until after the presentence investigation was completed." *Id.* at *6; *see also United States v. Foster*, 68 F.3d 86, 87–88 (4th Cir. 1995) (finding that the defendant's attempt to establish prejudice by claiming "if he had been correctly told that he could be sentenced as a career offender, he would not have pleaded guilty, but would have proceeded to trial" was not supported by the record which showed that any misinformation the defendant may have received from his attorney was corrected by the trial court at the plea hearing,

and because "the trial court properly informed [the defendant] the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him.") (citations omitted).

Here, at Wells' rearraignment, the record reflects the following exchange:

THE COURT: Now, if you're convicted on these charges, Mr. Wells, either following a trial or following a guilty plea, I need to advise you as to the maximum possible sentence that can be imposed. The maximum is life in prison, a fine of up to $12,500,000, up to a lifetime of supervised release, and a special assessment of $500. Do you understand the maximum possible penalties?

THE DEFENDANT: Yes, Your Honor.
. . .

THE COURT: Okay. Have you spoken to your own attorney about the federal sentencing guidelines and how those might apply to your particular case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand whatever she's told you about the guidelines at this point is based on her best professional judgment or estimate; however, it will ultimately be my job to calculate the guidelines? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the guidelines themselves are not binding or mandatory? However, I am required to calculate the guidelines, take them into consideration, and then for certain reasons I could decide to sentence you above the guidelines or below the guidelines. Do you understand?

THE DEFENDANT: Yes, Your Honor.

(Rec. Doc. 254). Just like the defendant in *Collins* was informed of the maximum sentence, Wells was informed of, and acknowledged, his maximum sentence of life imprisonment. Although this Court did not explicitly inform Wells that his specific

Sentencing Guideline range could not be determined until after a presentence investigation report was prepared like the court in *Collins* did, this Court made explicit that it was up to the Court to calculate the guidelines. Moreover, this Court made clear that it could sentence Wells above or below the guidelines. Therefore, the Court finds that counsel's performance was not deficient, and, even if it was, Wells was not prejudiced because the Court corrected any misinformation counsel may have told Wells.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Chris Wells' *Motion for Post-Conviction Relief under 28 U.S.C. § 2255* **(Rec. Doc. 323)** is **DENIED**.

New Orleans, Louisiana, this 1st day of November, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE